IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND (BALTIMORE DIVISION)

THE CIT GROUP/EQUIPMENT FINANCING, INC.,    *

        PLAINTIFF,    *

v.    *    CASE NO.    **1:02-CV-02069**

PAUL J. VIGNOLA ELECTRIC CO., INC., *et al.*, *

        DEFENDANTS.    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

OPPOSITION OF THE CIT GROUP/EQUIPMENT FINANCING, INC. TO
DEFENDANTS' MOTION FOR RECONSIDERATION

Plaintiff, The CIT Group/Equipment Financing, Inc. ("CIT"), by its attorneys, files its opposition to the motion of defendants Paul J. Vignola Electric Co., Inc. and Joann Vignola for reconsideration of this Court's order granting summary judgment in favor of CIT (the "Opposition").  CIT states the following in support of its opposition:

INTRODUCTION AND SUMMARY OF ARGUMENT

1.        On June 19, 2002, CIT filed its Complaint and Request for Writ of Replevin, wherein CIT alleged that the Defendants breached a Master Lease Agreement (the "Agreement") by, among other things, failing to make payments to CIT when and as due.

2.        Defendants Paul J. Vignola Electric Co., Inc. ("Vignola Electric") and Joann P. Vignola filed their answer on July 17, 2002.  Vignola Electric opposed CIT's request for the writ of replevin at a show cause hearing before the Court on July 25, 2002.

3.        CIT served a complete set of discovery requests on the Defendants on August 13, 2002.  CIT's discovery requests included a first set of Specific Requests for Admission.

4.      The Defendants failed to respond to any of CIT's discovery requests, including CIT's Requests for Admission.

5.      The Defendants never served any discovery requests of their own on CIT.  Discovery closed on December 9, 2002.

6.      The Defendants' failure to respond to CIT's Requests for Admission constituted the Defendants' admission of all matters that they had been requested to admit or deny.  FED. R. CIV. .P. 36(a).

7.      CIT's requests for admissions were comprehensive.  The Defendants' admissions resolved all issues of fact in CIT's favor and entitle CIT to judgment as a matter of law.

8.      On January 7, 2003, CIT filed its Motion for Summary Judgment based on the Defendants' failure to respond to CIT's discovery, including the Requests for Admissions.

9.      The Defendants filed their response to CIT's Motion for Summary Judgment on January 24, 2003.

10.      The Court granted CIT's Motion for Summary Judgment, but stayed operation of the judgment once the Court learned that the Defendants had filed a response.  On January 28, 2003, the Court entered an Order directing that the Defendants' response to CIT's Motion for Summary Judgment would be treated as a Motion to Reconsider the Court's granting of CIT's Motion for Summary Judgment.

11.      The Opposition fails for several reasons.  First, the Defendants' failure to timely respond to CIT's Request for Admissions is a proper basis for the entry of summary judgment against the Defendants.  Second, the Defendants' numerous failures to make monthly payments to CIT when and

as due (the Defendants haven't made a single monthly payment to CIT in over two years) constitutes a default under the Agreement and the Guaranty, rendering moot any argument as to whether the Agreement was a lease or a sale document. Third, the Defendants failed to prove the requisite elements of their fraud defense. Fourth, regardless of the interpretation of the Agreement, CIT has acted in a commercially reasonable manner. Lastly, there exists no dispute as to the amount of the judgment that should have been entered against the Defendants.

### UNDISPUTED OR ADMITTED FACTS PURSUANT TO RULE 36

12.     The underlying agreements on which CIT brought its case include a Master Lease Agreement between CIT and Vignola Electric (attached hereto as Exhibit A) and a Continuing Guaranty between CIT and JoAnn P. Vignola (attached hereto as Exhibit B).

13.     Ms. Vignola executed the Master Lease Agreement (the "Agreement") in her capacity as president of Vignola Electric on November 19, 1999. The Agreement describes a commercial transaction wherein Vignola Electric obtained lease financing from CIT to acquire a piece of construction equipment for use in Vignola Electric's business as an electrical services contractor.

14.     Vignola Electric admitted that it defaulted on its obligations under the Agreement by, *inter alia*, failing to make payments to CIT when and as due, as required thereunder.

15.     Vignola Electric admitted that the transaction related to the Agreement is and was at all relevant times commercial in nature.

16.     Vignola Electric admitted that its failure to pay CIT the amounts called for in the Agreement constituted a default or breach of the Agreement, as described by the terms thereof.

17.     Vignola Electric admitted that, pursuant to the terms of the Agreement, it owes CIT the

amount of $365,703.04, plus reasonable attorneys' fees, interest, costs of this action, and other expenses incurred by CIT in enforcing its rights under the Agreement.

18.    In addition to admitting the preceding facts to which Vignola Electric admitted, Joann Vignola admitted that she knowingly and voluntarily executed the document entitled "Continuing Guaranty" (the "Guaranty") in her individual capacity on or about November 19, 1999.

19.    Ms. Vignola admitted that she defaulted on her obligations under the Guaranty by, *inter alia*, failing to pay CIT all sums due under the Agreement upon Vignola Electric's default thereunder, as required by the Guaranty.

20.    Ms. Vignola admitted that the failure by Vignola Electric to pay CIT the amounts called for in the Agreement constituted a default or breach of the Agreement, as described by the terms thereof.

21.    Ms. Vignola admitted that her failure to pay or perform the obligations of Vignola Electric to CIT constituted a default or breach of the Guaranty, as described by the terms thereof.

22.    Ms. Vignola admitted that, pursuant to the terms of the Agreement, Vignola Electric owes CIT the amount of $365,703.04, plus reasonable attorneys' fees, interest, costs of this action, and other expenses incurred by CIT in enforcing its rights under the Agreement.

23.    Ms. Vignola admitted that, pursuant to the terms of the Guaranty, she owes CIT the amount of $365,703.04, plus reasonable attorneys' fees, interest, costs of this action, and other expenses incurred by CIT in enforcing its rights under the Guaranty.

24.    The Defendants admit that they did not serve timely responses to CIT's discovery, including its Requests for Admission.    Indeed, the Defendants never served answers to CIT's

interrogatories or responses to CIT's requests for production of documents. The Defendants have essentially ignored this case and are awakened only now that CIT has moved against them for summary judgment.

<u>STANDARD OF REVIEW</u>

25.    The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. Although Local Rule 105.10 addresses such motions, it does not state the standard for resolving motions for reconsideration. The 4th Circuit has not yet enunciated such a standard. *See Potter v. Potter*, 199 F.R.D. 550, 552 (D. Md. 2001).

26.    In *Potter*, this Court stated that although the 4th Circuit had not enunciated a rule:

> Other courts have, and their guidance is instructive. In the widely cited case of *Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D. 99 (E.D. Va. 1983), the court noted that there are 'circumstances when a motion to reconsider may perform a valuable function', but added that it was improper to use such a motion to 'ask the Court to rethink what the Court had already thought through -- rightly or wrongly.' Id. at 101. The Court concluded:
>
> The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Potter*, 199 F.R.D. at 552.

<u>ARGUMENT</u>

A.    <span>THE DEFENDANTS' ADMISSIONS PROVIDE A PROPER BASIS FOR GRANTING SUMMARY JUDGMENT IN FAVOR OF CIT.</span>

27.    This Court has held that "admissions obtained under Rule 36, including matters deemed to be admitted by a party's failure to respond to a request for admissions, 'can form the basis for granting Summary Judgment.'" *United States v. Turk*, 139 F.R.D. 615, 617 (D. Md. 1991) (*quoting Gardner v. Borden, Inc.*, 110 F.R.D. 696, 697 (S.D. W. Va. 1986)). *See also Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa. 1975); *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 667-68 (N.D. W. Va. 1975).

28.    The Defendants concede, as they must, that FED. R. CIV. P. 36(a) deems admitted all matters for which admissions are requested if no response is served upon the propounding party within 30 days.  The Defendants also concede that they failed to timely respond to CIT's Requests for Admission.

29.    The Defendants' Opposition offers no explanation why the Defendants ignored CIT's discovery requests.

**B.    WHETHER THE DEFENDANTS INTENDED TO LEASE THE EQUIPMENT OR PURCHASE THE EQUIPMENT, THE DEFENDANTS FAILED TO MAKE PAYMENTS TO CIT WHEN DUE, CONSTITUTING DEFAULT UNDER THE AGREEMENT AND THE GUARANTY.**

30.    The Opposition emphasizes that the defendant Vignola Electric intended to purchase, rather than lease, the Equipment, and that the structure of this transaction as a lease amounts to fraud. This is a distinction without a difference insofar as it relates to CIT's right to summary judgment in this case.  Whether the Defendants breached a lease or a security agreement the sanction would be the same – a judgment for damages in favor of CIT.

31.    Moreover, the Defendants offer the affidavit of Paul J. Vignola, the corporate secretary of Vignola Electric, in support of their arguments.  The affidavit must be stricken in its entirety because

the Defendants refused to answer any of CIT's discovery requests and, to date, still have not given the requested discovery. They cannot pick and choose when they will present facts or other evidence to CIT and the Court. The time to do this was during discovery, a process in which the Defendants declined to participate. CIT moved separately to strike the affidavit and adopts herein the arguments set forth in that motion.

32.    Without waiving its rights to have the Vignola affidavit stricken, CIT will respond to the lease/purchase issue. Although entitled a lease agreement, the Agreement operated in the same manner as purchase-money financing, even in terms of title to the Equipment. There are no practical differences between this form of lease financing and purchase money financing insofar as who owns the Equipment at the end of the term. Lease financing such as that described in the Agreement accommodates the lessee's need for certain treatment in its accounting and tax planning. As would be the case with conventional secured financing, the Agreement in this case contemplated that the Defendants would consume the entire economic value of the Equipment by the end of the term, and, if they successfully completed that term, they would own the Equipment. The Defendants never got even remotely near completing the Agreement – they went into default almost immediately after entering into the Agreement. They then engaged in a campaign not to pay CIT and prevent CIT from retaking the Equipment. That campaign continues.

33.    As the Defendants themselves admitted, they failed to make payments to CIT when and as due. This failure to make payments constituted a default under the Agreement. When Ms. Vignola failed to make payments pursuant to the Agreement, she was in default of the Guaranty.

34.    Whether the Defendants intended to purchase or to lease the Equipment is a moot point

in light of the Defendants' failure to pay for the Equipment – under either financing vehicle they would be obligated to pay.  This they failed to do.

35.    The Defendants also take issue with their inability to cancel the Agreement.  Even if the Agreement were a sale document rather than a lease, the Defendants still would be unable to rescind the document.  There would be no difference in the end result.  It is a mystery to CIT why the Defendants think this issue is helpful when in fact it harms their argument.

36.    Thus, there is no genuine issue of material fact as to the lease/purchase distinction and CIT is entitled to judgment as a matter of law.

**C.    THE DEFENDANTS FAILED TO DEMONSTRATE A FRAUD PERPETRATED BY CIT.**

37.    As an initial matter, it is noteworthy that the Defendants raise the specter of fraud for the first time in their Opposition.  They did not raise it at the show-cause hearing.  They did not raise it in conversations between counsel.  They did not explore it in discovery, and they did not assert it in response to CIT's discovery because they never served discovery requests or responses.  The fraud issue is a lately manufactured issue and a classic "red herring."

38.    Nevertheless, and without waiving its argument that the Vignola affidavit must be stricken, CIT responds as follows.  Fraud necessarily requires a showing of intentional misrepresentation, reasonable reliance upon such representation, and detriment due to such reliance.  The Defendants failed to demonstrate the requisite elements of fraud.  Accordingly, there is no genuine issue of material fact on this point.

INTENTIONAL MISREPRESENTATION

39.    First, the Defendants failed to demonstrate intentional misrepresentation by CIT or

reasonable reliance by the Defendants upon such imagined misrepresentation. Assuming *arguendo* that CIT misinformed the Defendants by stating it would later change the transaction documents to reflect a sale rather than a lease, the misrepresentation was innocent and harmless.

40.    As noted in the preceding section, the Agreement functioned in the same manner as purchase money financing, including with respect to title to the Equipment at the end of the term. This presumes that the lessee actually *reach* the end of the term having satisfied its obligations to the lessor. Vignola Electric did not. Lease financing, such as that which the Defendants selected, and purchase money financing have no practical differences insofar as who owns the Equipment at the end of the term. The Agreement contemplated that the Defendants would consume the entire economic value of the Equipment by the end of the term, just as the Defendants would if they financed the Equipment through conventional secured financing.

41.    A change in the name of the transactional document would not have affected the end result of the transaction. The Defendants, therefore, cannot demonstrate any intentional misrepresentation by CIT.

REASONABLE RELIANCE

42.    Second, the Defendants failed to demonstrate that they reasonably relied upon the imagined misrepresentation. In their Opposition, the Defendants simply make a conclusory statement that they reasonably relied, yet the facts belie that statement.

43.    An undisputed fact in this case is that the Defendants never completed the term of the Agreement. Rather than making the required monthly payments to CIT in accordance with the Agreement, the Defendants made just a handful of payments. In fact, the Defendants failed to make

*any* payment to CIT for over *two years*, despite the large financing CIT provided to the Defendants.

44.     Put simply, the Defendants defaulted under the Agreement by failing to make payments to CIT when and as due.  There is no evidence of reasonable reliance whatsoever.

DETRIMENT DUE TO THE RELIANCE

45.     Third, the Defendants failed to demonstrate any injury or detriment due to reliance on the imagined misrepresentation.  Without a harm there can be no claim.

46.     As stated above, the Agreement permitted Vignola Electric to "purchase" the Equipment for just one dollar ($1.00) at the end of the term.  Again, the right to purchase the Equipment for $1 at the end of the term exists only when the lessee is not in default at the end of the term.  Vignola Electric has been in default for over two years.  It is a terrible customer.  It would have had no right to keep the Equipment regardless of whether the transaction was a loan or a lease. Thus, Vignola Electric has not been harmed.  To the contrary, it profited from the use and consumption of the Equipment without suffering the obligation to pay for it.

**D.     CIT HAS PROCEEDED IN A COMMERCIALLY REASONABLE MANNER.**

47.     The Defendants insist that CIT failed to demonstrate that it has proceeded against the Equipment in a commercially reasonable manner.  This is not CIT's burden – the Defendants must demonstrate some facts evidencing a violation of this central tenet of the law of secured transactions.  If they produce such proof, CIT must respond.  The Defendants have not produced such proof.  They only "allege."  This argument reveals a complete misunderstanding of secured creditors' obligations and is without merit.

48.     The Defendants claim that the Agreement is not a lease but rather a "disguised" security

interest for a loan and agreement to purchase the Equipment.  Assuming *arguendo* that this statement

has merit, CIT has proceeded in a commercially reasonable manner in this case.

49.    Section 9-610(a) of the Commercial Law Article of the Maryland Code provides that

after default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral

or following any commercially reasonable preparation or processing.  MD. CODE ANN. COM. LAW II §

9-610(a) (2002).  Every aspect of the disposition of the collateral must be commercially reasonable.

*Id.* § 9-610(b).

50.    The Official Comment to § 9-610 states,

> This Title does not specify a period within which a secured party must
> dispose of collateral.  This is consistent with this Title's policy to
> encourage private dispositions through regular commercial channels.  It
> may, for example, be prudent not to dispose of goods when the market
> has collapsed.  Or, it might be more appropriate to sell a large inventory
> in parcels over a period of time instead of in bulk.

*Id.* § 9-610 Official Cmt.

51.    CIT has proceeded in this matter in a commercially reasonable manner.  As the Official

Comment to § 9-610 provides, there is no specific period within which CIT must dispose of the

Equipment.  Although it is their burden, the Defendants have set forth nothing to indicate that CIT has

acted in other than a commercially reasonable manner.

52.    Again, the inescapable fact is that the Defendants, while reaping the benefits of the

Equipment, never made the payments required by the Agreement.  Whether the Agreement is a lease or

a sale document, the Defendants failed to comply with its terms.

**E.    THERE EXIST NO FACTUAL DISPUTES AS TO THE AMOUNT OF A POTENTIAL JUDGMENT.**

53.    The Defendants allege that the amount demanded by CIT in its Complaint far exceeds

what CIT would be entitled under the Uniform Commercial Code and that CIT should have no

expectation of obtaining a judgment in the amount requested in its Requests for Admissions.

54.    Paragraph 13 of the Agreement provides CIT with a number of remedies in the event of

default by the Defendants, including allowing CIT to recover from the Defendants damages in an amount

equal to the sum of

> (i) all unpaid rent and other amounts that become due and payable on,
> or prior to, the [date of default], (ii) the present value of all future rentals
> and other amounts described in the [Agreement] and not included in (i)
> above discounted to the [date of default] at a rate equal to the discount
> rate of the Federal Reserve Bank of San Francisco as of the [execution
> date of the Agreement] with respect to each Schedule (which discount
> rate [Vignola Electric] agrees is a commercially reasonable rate which
> takes into account the facts and circumstances at the time such
> Schedule commenced), (iii) all commercially reasonable costs and
> expenses incurred by [CIT] in enforcing [CIT's] rights under this
> [Agreement] or defending against any claims or defenses asserted by or
> through [Vignola Electric], including but not limited to, costs of
> repossession, recovery, storage, repair, sale, re-lease and reasonable
> attorneys' fees, (iv) the estimated residual value of the Equipment as of
> the expiration of the [Agreement], (v) any indemnity amount payable to
> [CIT], and (vi) interest on all of the foregoing from the [date of default]
> until the date payment is received by [CIT] at 18% per annum or the
> highest rate permitted by California law, whichever is less.

55.    The accounting offered by the Defendants  omits the permitted charges, costs and

expenses incurred by CIT in enforcing its rights under the Agreement, the estimated residual value of the

Equipment as of the expiration of the Agreement, and interest on all of the foregoing.  The Defendants'

misunderstanding of the Agreement does not constitute a genuine dispute of material fact.  Their

argument is merely an attempt to create a factual dispute where none exists by neglecting to list all of the

damages to which CIT is entitled.

56.    Contrary to the Defendants'  assertions, *Hollerbach & Andrews Equipment Co. v.*

*Southern Concrete Pumping, Inc.*, 1996 U.S. Dist. LEXIS 6428 (D. Md. 1996), does not stand for the proposition that a lessor must mitigate its damages. Instead, *Hollerbach* provides that the incidental damages to be awarded to an aggrieved lessor are those occasioned by such matters as storage and disposal of goods in a commercially reasonable manner and are only those expenses directly incurred by a lessor as a result of the lessee's default. Id. at *8. In *Hollerbach*, the lessor used the returned goods in its own business and then sought to recover, as an incidental expense, the costs of using the goods. The Court held that although the lessor could, pursuant to Section 2A-530 of the Commercial Law Article of the Maryland Code, seek incidental damages in connection with the wrongful repudiation of an installment lease contract, the expenses must have been incurred directly as a result of the default. *Id.*

57. The Defendants apparently cite *Tokai Financial Services, Inc. v. Mathews, Gallovic, Granito & Co.*, No. 95-L-098, 1995 Ohio App. LEXIS 5163 (Ohio Nov. 24, 1995), an Ohio case, for the proposition that CIT's lease is invalid because it lacks a mitigation of damages clause. This is flatly absurd. *Tokai* involved an action filed by the lessor of a telephone system to recover damages for breach of the lease. The lessees admitted breach of the lease but denied that the lessor was entitled to recover the amount of damages which it sought. *Id.* at *2-*3. The *Tokai* court determined that the lessor had a duty to mitigate its damages, largely because the lease itself contained a mitigation clause. *Id.* at *8. By the inclusion of the mitigation clause, which created a rational relationship between the impact of the lease's acceleration clause and the actual damages sustained by the lessor, the acceleration clause was enforceable. *Id.* at *6 (*citing Frank Nero Auto Lease v. Townsend*, 411 N.E.2d 507 (Ohio 1979)).

58.     Notwithstanding that the case is not binding on this Court, *Tokai* is another "red herring" designed to confuse the issues in this case. A seller or lessor unquestionably owes a duty to mitigate its damages. The Defendants, however, have not put forth facts indicating CIT's failure to mitigate. Instead, the Defendants allege that CIT is not entitled to the amount of damages it seeks. In an action arising from a transaction in which the amount of a deficiency or surplus is in issue, '[a] secured party need not prove compliance with the provisions of this subtitle relating to collection, enforcement, disposition, or acceptance unless the debtor . . . places the secured party's compliance in issue." MD. CODE ANN., COM. LAW I § 9-626(1) (2002). The Defendants have not placed CIT's compliance with the preceding provisions in issue, further rendering irrelevant the Defendants' mitigation argument.

59.     CIT is entitled to recover the sum of the figures listed in Paragraph 13 of the Agreement. These are expenses incurred by CIT as a direct result of the Defendants' default under the Agreement. As long as these expenses were commercially reasonable and CIT has proceeded in a commercially reasonable manner, then CIT is entitled to recover damages for the Defendants' default. The Defendants' Opposition, however, does not provide the necessary facts to generate a dispute on this issue or put commercial reasonableness in issue.

60.     Notwithstanding these false damages issues, CIT's disposition of the Equipment does not relate to or affect the fact that the Defendants are liable for breach of contract.

**WHEREFORE**, for the foregoing reasons, The CIT Group/Equipment Financing, Inc. respectfully requests that this Court enter an Order:

A.    Denying Defendants Paul J. Vignola Electric Co., Inc. and Joann P. Vignola's motion for reconsideration;

B.    Removing the stay from the Court's prior order entering summary judgment in favor of CIT and against Vignola Electric and Ms. Vignola; and

C.    Granting CIT such other and further relief as the Court deems appropriate.

Respectfully submitted,

_____/s/_____
Steven N. Leitess, Fed. Bar No. 05856
Andrew L. Cole, Fed. Bar No. 14865
Leitess, Leitess & Friedberg, P.C.
25 Hooks Lane, Suite 302
Baltimore, Maryland 21208
(410) 486-2600
(410) 486-8438 Fax

*Attorneys for The CIT Group/*
*Equipment Financing, Inc.*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2003, a copy of the foregoing Opposition of The CIT Group/Equipment Financing, Inc. to Defendants' Motion for Reconsideration was sent by first-class mail, postage prepaid, to:

Robert J. Kim, Esq.
Mark Schweitzer, Esq.
McNamee, Hosea, Jernigan, Kim,
Greenan & Walker, P.A.
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770

_____/s/_____
Steven N. Leitess